IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ANGELA-CRYSTAL THORNTON | ) | CASE NO.  1: 06 CV 0018 |
| 1220 EDDY ROAD | ) | |
| EAST CLEVELAND, OHIO 44108 | ) | |
| | ) | JUDGE:  GAUGHAN |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE | ) | |
| INSURANCE COMPANY | ) | |
| 1 STATE FARM PLAZA | ) | **THIRD AMENDED CLASS ACTION** |
| BLOOMINGTON, ILLINOIS | ) | **COMPLAINT** |
| | ) | [*Jury Demand Endorsed Hereon*] |
| DEFENDANT | ) | |
| | ) | |

**Introduction**

1.     As a public safety and fraud prevention measure, in certain

circumstances when an insurer becomes the owner of a car it has

declared a "total loss" it must obtain a "salvage" title.  A salvage title puts

others, including both direct and subsequent purchasers, on notice of the

vehicle's salvage status.

2.     From June 1, 1997 through at least 2003, State Farm failed to

obtain required "salvage" titles on at least 32,000 such "total loss"

vehicles.   State Farm's concealment of the salvage status of these

vehicles launders the title - by eliminating the salvage "branding" of the

title State Farm hides the title's conspicuous disclosure that the vehicle has

sustained substantial accident damage. By this device, State Farm deliberately evades state salvage title law.

3.     Ultimately, State Farm sells these masked salvage vehicles and they are reintroduced to the consumer market, often in another state, using the laundered certificate of title to hide their salvage status.

4.     By this scheme, State Farm knowingly places damaged, unsafe, and deceptively titled automobiles into the stream of commerce. State Farm knows, or should know, that these vehicles will be ultimately sold to unwitting consumers.  By concealing the occurrence of an accident so severe that it results in a "total loss" settlement, State Farm also perpetuates a scam in which unwitting consumers like the plaintiff, Ms. Thornton, pay full market value for a vehicle which would otherwise have limited or no marketability.

5.     This fraudulent scheme harms the unsuspecting consumers who buy the salvaged vehicles, as well as places at risk the safety of the general public, which shares the road with these damaged vehicles.

6.     In 1998, the Indiana Attorney General discovered that State Farm was selling masked salvage vehicles. The Attorney General brought suit against State Farm, and State Farm ultimately agreed to a consent judgment with the Attorney General which required it to buy back all masked salvage vehicles and reimburse

2

the interest and insurance expenses incurred by identified Indiana consumers. State Farm also agreed to an injunction requiring it to obtain salvage titles for all Indiana vehicles which it declared "total losses."

7.    Despite the Indiana judgment, State Farm continued to deliberately or recklessly place concealed salvage vehicles back into the marketplace. In 2005, State Farm agreed to a nationwide settlement with the Attorneys General of the other 49 states, for the same salvage title masking scheme. State Farm agreed to pay some 32,000 consumers nationwide with masked salvage vehicles approximately twenty-five percent of current NADA "blue book" value in exchange for a release from liability. Consumers had until November 18, 2005 to decide whether to accept the fractional payment of damages provided by the 49 state settlement.

8.    More than 1,000 of the consumers entitled to opt-in to the AG settlement are Ohio residents. Only 392 Ohioans elected to participate in the settlement.

9.    This class action seeks to enjoin State Farm's illegal and dangerous scheme, obtain damages for the affected Ohioans who did not opt-in to the AG settlement, obtain a declaration that State Farm's conduct violates applicable law, and obtain preliminary and permanent injunctions preventing future conduct of this type.

## Jurisdiction and Venue

10.     Jurisdiction of this court arises under 28 U.S.C. §1332.

Supplemental jurisdiction exists for the state law claims pursuant to 28

U.S.C. § 1367.  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201

and 2202.

11.     Venue in this district is proper in that State Farm transacts

business here and the cause of action arose here.

## Parties

12.     Plaintiff Angela-Crystal Thornton is an individual currently

residing at 1220 Eddy Road, East Cleveland, Ohio.

13.     Defendant State Farm Mutual Automobile Insurance

Company is an insurance company with a principal place of business at 1

State Farm Plaza, Bloomington, Illinois. State Farm insures motor vehicles in

Ohio and in other states.

## Factual Allegations

## Ms. Thornton's Car

14.     On or about October 6, 2001, Ms. Thornton purchased a 1997

Honda Accord for $15,450. The title that Ms. Thornton received did not

indicate that the car was a salvage vehicle.

15.     Unbeknownst to Ms. Thornton, prior to her purchase the car

had been damaged so extensively in a collision that State Farm declared

it a total loss, paid the former owner a "total loss" claim settlement, and took ownership of the car.

16.     State Farm never obtained a salvage title for the car.

17.     State Farm sold the car to a salvage dealer.

18.     Ultimately, the car was sold, with a "clean" title, to Ms. Thornton.

19.     On or about September 14, 2005, Ms. Thornton received a letter from the Ohio Attorney General, informing her that State Farm had previously declared her car a "total loss" and that State Farm had failed to obtain a "salvage title" for the car as required by law.

20.     The letter further disclosed that State Farm had reached an agreement with 49 state attorneys general to pay a fraction of the affected cars' values to consumers who decided to accept the terms of the settlement.  Under the settlement, Ms. Thornton would have been paid approximately $1,650, based on her car's NADA value of $6,600. Ms. Thornton, like most Ohioans, decided not to settle her claims against State Farm for twenty-five percent of NADA value and so did not accept the settlement. A copy of the AG letter Ms. Thornton received is attached as Exhibit A.

21.     On or about October 28, 2005, Ms. Thornton received a letter from the Ohio Bureau of Motor Vehicles ("BMV"), informing her that she cannot sell her car without first obtaining a "rebuilt salvage" title. The letter

5

further disclosed that if Ms. Thornton did not obtain a "rebuilt salvage" title by January 31, 2006, her existent title would be automatically cancelled and replaced with a salvage title.  "Normally, when … a salvage title [is] issued, the vehicle can no longer be registered and cannot be legally operated on public roads." A copy of the BMV letter Ms. Thornton received is attached as Exhibit B.

22.    Until the Bureau of Motor Vehicles and the Attorney General advised them, Ms. Thornton and class members did not know and could not reasonably have discovered that they had purchased masked "total loss" and salvage vehicles.

## The AG Settlement

23.    "In nearly every state, the law requires that, under certain circumstances, a new title be issued for ["total loss"] vehicle[s] bearing a brand indicating it is a 'salvage' (or in some states 'damaged', 'junk', 'rebuilt', 'flood', 'non-highway', or 'recovered theft') vehicle."  See Exhibit A, letter from Ohio Attorney General.

24.    From June 1, 1997 through at least 2003 State Farm sold to third party salvage dealers at least 32,000 vehicles it had obtained ownership of by paying a "total loss" settlement to an insured.

25.    State Farm never obtained salvage titles for these vehicles.

26.    On January 6, 2005, the Ohio Attorney General signed an Assurance of Voluntary Compliance with State Farm. State Farm signed

the same form settlement agreement with the Attorneys General of 48 other states (the "AG Settlement"). Under the settlement, State Farm informed the Ohio Attorney General and the BMV that the vehicles owned by Ms. Thornton and class members "need a branded [i.e. salvage] title." See Exhibit A, AG Letter, at 2.

27.    Based upon State Farm's disclosure that the affected vehicles required salvage titles, the BMV has branded as "salvage" the vehicles which Ms. Thornton and class members own. This salvage brand was unavoidable, and applies even though Ms. Thornton and class members have not elected to opt in to the AG settlement. See Exhibit A, AG Letter, at 2.

28.    The AG letter Ms. Thornton and class members received emphasizes that "a vehicle that has been declared a total loss and which needs a branded title cannot be resold without full disclosure to the new purchaser that the vehicle was a total loss and needs a 'salvage' vehicle title… ." See Exhibit A, AG Letter, at 2.

29.    To ensure that these masked salvage vehicles are not resold the BMV has placed a block on the titles of Ms. Thornton and class members, "so their vehicle[s] cannot be sold or transferred to any other person until the proper [i.e., rebuilt salvage] title has been obtained." See Exhibit B, BMV Letter, at 1.

30.     State Farm's representations to the Ohio Attorney General
and the Ohio BMV that the vehicles owned by Ms. Thornton and class
members were required to be titled as salvage estops it from denying that
it was not required to initially obtain such salvage titles.

31.     As a direct and proximate result of State Farm's
representations to the Ohio Attorney General and the Ohio BMV, class
members who did not obtain "rebuilt" salvage titles by January 31, 2006
will be unable to drive on roadways and/or obtain insurance for their
vehicles.  Ms. Thornton and class members have suffered this damage
through no fault of their own, but rather as a direct and foreseeable result
of State Farm's salvage masking scheme, and its after the fact disclosure
to the AG and the BMV that affected vehicles are, in fact, salvage
vehicles.

32.     Ms. Thornton and many other class members who financed
the purchase of their vehicles still owe substantial amounts on these loans,
and will be required to continue to pay for vehicles that they can no
longer use and enjoy. If class members cannot afford to continue to pay
for vehicles they cannot use, they may default on the loans, have their
vehicles repossessed and suffer damage to their credit.

**First Claim for Relief**
(Fraud)

33.     Salvage title law imposed a duty upon State Farm to disclose that the vehicles ultimately purchased by Ms. Thornton and class members had been deemed "total loss" or salvage vehicles.  This disclosure is made in the form of a salvage title.

34.     State Farm, by its title laundering scheme, intentionally concealed the "total loss" or salvage history of the vehicles from ultimate purchasers such as Ms. Thornton and class members.

35.     The vehicles' "total loss" or salvage status were material facts that State Farm concealed or failed to disclose to ultimate purchasers like Ms. Thornton and class members, by its failure to obtain salvage titles.

36.     State Farm's concealment or misrepresentation of these material facts was deliberate and intentional, performed with knowledge of the falsity of such omissions and/or misrepresentations, or with such utter disregard and recklessness that its knowledge can be inferred.

37.     By failing to obtain salvage titles, State Farm intended that ultimate purchasers such as Ms. Thornton and class members rely upon its material omissions and/or misrepresentations.

38.     Ms. Thornton and class members were justified in relying upon State Farm's direct or indirect misrepresentation that the vehicles they purchased did not have salvage titles, and in relying upon State Farm's legal obligation to disclose the salvage status of a vehicle.

9

39.     Ms. Thornton and class members were justified in relying on the titles they received, which did not disclose the salvage status of their vehicles.

40.     Ms. Thornton and class members' reliance is presumed because the salvage status of their vehicles is a material fact which State Farm concealed.

41.     Until the Bureau of Motor Vehicles and the Attorney General advised them, Ms. Thornton and class members did not know and could not reasonably have discovered that they had purchased masked "total loss" and salvage vehicles.

42.     Ms. Thornton and class members were damaged because they have unwittingly purchased and have been driving inherently unsafe vehicles, with a true value that is substantially less than comparable vehicles without a "total loss" or salvage history, and which have unmarketable titles.

43.     State Farm's failure to obtain a salvage title, as required by law, and its admissions to the Ohio Attorney General and BMV that the vehicles should have had salvage titles, caused Ms. Thornton and class members' damages, and it was foreseeable to State Farm that Ms. Thornton and class members would be damaged by its actions.

## Second Claim for Relief
(Violation of Consumer Sales Practices Act)

44.     State Farm is a supplier as defined by the Consumer Sales Practices Act, R.C. § 1345.01(C), because it is engaged in the business of effecting or soliciting consumer transactions, either directly or indirectly with consumers.

45.     Ms. Thornton is a consumer as defined by R.C. § 1345.01(D), and her purchase of the 1997 Honda Accord is a consumer transaction as defined in § 1345.01(A), because it was purchased primarily for personal, family or household purposes.

46.     State Farm has engaged in unfair and/or deceptive acts and practices, and unconscionable acts and practices, in violation of R.C. § 1345.02 and 1345.03, by conduct that includes, without limitation, the following acts:

> a.   Failing to obtain "salvage" titles on vehicles as to which it has admitted it should have obtained such titles;
>
> b.   Failing to obtain "salvage" titles on vehicles it declared to be a "total loss" where required by law;
>
> c.   Deceptively concealing from subsequent purchasers that these vehicles were salvage vehicles which had been declared to be total loss vehicles;
>
> d.   Deceptively making it appear that these "total loss" and/or salvage vehicles had "clean" (i.e non-salvage) histories;
>
> e.   Placing damaged and dangerous vehicles into the stream of commerce by not disclosing or by concealing the vehicles' "total loss" and/or salvage history;
>
> f.   Misleading or otherwise misinforming consumers, either directly or indirectly, about the vehicles' title and damage histories;

11

g.   Evading its legal duty to obtain a salvage title for total loss vehicles;

h.   Selling salvage vehicles without salvage titles, resulting in the invalidation of those titles by the BMV upon State Farm's notification of the title defects;

i.   Causing class members' vehicles to become essentially worthless as a result of State Farm's failure to obtain salvage titles and the subsequent invalidation of the existing titles;

j.   Engaging in conduct that directly or indirectly violates state consumer protection and public safety laws; and

k.   Otherwise engaging in unfair and deceptive and/or unconscionable conduct in connection with the sale of total loss vehicles.

47.     State Farm's conduct as described herein violates the Consumer Sales Practices Act, R.C. § 1345.01 *et seq.,* the substantive rules promulgated thereunder, including, without limitation, Ohio Admin. Code 109:4-3-16 (B)(29) and other subsections of that rule, and is deceptive and unconscionable in accordance with R.C. § 1345.09(B) and decisions of Ohio state courts.

48.     State Farm's conduct as described herein constitutes a knowing violation of R.C. § 1345.01 *et seq.*

49.     State Farm was not engaged in the lawful business of insurance when it sold masked salvage vehicles.

50.     Ms. Thornton and class members have suffered damage by virtue of one or more of these unfair and/or deceptive, or unconscionable practices.

12

51.     Ms. Thornton and class members are entitled to relief for State Farm's unfair and/or deceptive, or unconscionable practices pursuant to R.C. § 1345.09.

### Third Claim for Relief
(Breach of Warranty of Title)

52.     The sale of goods under the Uniform Commercial Code creates express and/or implied warranties of title.

53.     The warranty of title is a warranty that: "(1) The title conveyed shall be good, and its transfer rightful." R.C. § 1302.25(A)(1).

54.     State Farm created warranties of good [i.e., non-salvage, marketable] title when it sold the cars ultimately purchased by Ms. Thornton and class members.

55.     State Farm breached this warranty of title by selling, and thereby introducing into the marketplace, vehicles which did not have good title because they needed a salvage brand.  State Farm has notice of its breach.

56.     State Farm's breach of the warranty of title damaged Ms. Thornton and class members, in that they did not receive the good or marketable title to their vehicles which was warranted, and they now are saddled with "clouded" and unmarketable salvage branded titles, and vehicles which cannot be sold or transferred to any other person until the proper [i.e., rebuilt salvage] title has been obtained.

57.     State Farm's breach of the warranty of title also damaged Ms. Thornton and class members, in that they paid substantially more for their vehicles with the warranted clean title than those masked salvage vehicles were actually worth.

58.     State Farm's breach of the warranty of title damaged Ms. Thornton and class members, in that they now have clouded titles which cannot be cleared of the salvage or rebuilt salvage brand.

59.     Because of State Farm's conduct, Ms. Thornton and class members never obtained a clean, marketable title to their vehicles.

60.     Ms. Thornton and class members are entitled to damages, including restitution from State Farm for the entire amount they paid to obtain their vehicles because, due to State Farm's misconduct, they never acquired the clear and marketable title which State Farm warranted.

**Fourth Claim for Relief**
(Breach of Warranty of Merchantability and Duty of Good Faith
under the UCC)

61.     The sale of goods under the Uniform Commercial Code creates an express or implied warranty of merchantability, which includes a warranty that goods sold are fit for ordinary purposes, when goods are sold by a merchant with respect to goods of that kind. See, R.C. § 1302.27.

62.     State Farm is such a merchant because it regularly sells vehicles it acquires after they are declared a total loss.

14

63.     State Farm breached the warranty of merchantability by selling vehicles which had been declared a total loss without disclosing their status by obtaining a salvage title.  State Farm has notice of its breach.

64.     The U.C.C. imposes a duty of good faith in the performance or enforcement of every contract. See, R.C. § 1301.09.

65.     The duty of good faith requires sellers to disclose known material or hidden defects.

66.     State Farm breached this duty by failing to disclose or by concealing the salvage status of the vehicles purchased by Ms. Thornton and other class members.

67.     State Farm's breach of the warranty of merchantability and breach of the duty of good faith damaged Ms. Thornton and class members, in that they now have vehicles with clouded, unmarketable titles which cannot be cleared of the salvage or rebuilt salvage brand, cannot be resold, may have substantial damage, or may be in dangerous condition.

68.     Ms. Thornton and class members are entitled to damages, including restitution from State Farm for the entire amount they have paid to purchase their vehicles.

**Fifth Claim for Relief**
(Breach of Common Law Implied Warranties)

69.    When it sold the vehicles purchased by Ms. Thornton and
class members, State Farm impliedly warranted that the vehicles were of
good and merchantable quality, that they were fit for ordinary purposes,
and that they were free of major hidden defects.

70.    State Farm breached these implied warranties by selling
salvage vehicles that appeared to be non-salvage vehicles because their
titles did not reflect their salvage status.

71.    State Farm was under a statutory duty to disclose the
vehicles' salvage status by obtaining a salvage title.

72.    State Farm breached this duty by failing to disclose or by
concealing the salvage status of the vehicles purchased by Ms. Thornton
and other class members.

73.    State Farm's breach of these implied warranties damaged
Ms. Thornton and class members, in that they now have vehicles with
clouded, unmarketable titles which cannot be cleared of the salvage or
rebuilt salvage brand, cannot be resold, may have substantial damage,
or may be in dangerous condition.

74.    Ms. Thornton and class members are entitled to damages,
including restitution from State Farm for the entire amount they have paid
to purchase their vehicles.

**Sixth Claim for Relief**
(Consequential and Equitable Relief for Void Transfer)

75.    State Farm's title laundering scheme violates the public policy of Ohio generally, and as expressed in Ohio's Certificate of Motor Vehicle Title Law.

76.     Deliberately or recklessly placing seriously damaged vehicles in the consumer marketplace while concealing the material fact that these vehicles had been declared "total losses" and or salvage vehicles is detrimental to the public safety and welfare as indicated by the various states' enactment of their title branding laws.

77.    Under Ohio's Certificate of Motor Vehicle Title Law, State Farm was required to surrender title to the Plaintiffs' vehicle in order to obtain a salvage certificate of title. R.C. §4505.11(C).

78.    R.C. § 4505.19(A)(5) of the Title Law prohibits the sale of a vehicle with a title that is required to be surrendered.

79.    The underlying title transfers which State Farm effected are therefore void under R.C. § 4505.19(A)(5), and are void as against public policy.

80.    Ohio law sanctions State Farm's conduct by a variety of civil and criminal measures.

81.    Because of State Farm's actions, Ms. Thornton and class members never obtained good and marketable title.

17

82.     Because they now have actual knowledge of the invalid or defective state of their existing title, and because the BMV has taken steps to brand those titles as "salvage", Ms. Thornton and class members are prevented from making further transfers of the vehicles and/or operating their vehicles on the public roadways.

83.     Ms. Thornton and class members are entitled to restitution from State Farm for the entire amount they paid to obtain their vehicles because, due to State Farm's misconduct, they never acquired a good and marketable title in their vehicles.

**Seventh Claim for Relief**
(Negligence *Per Se*)

84.     Ohio law imposes a duty upon State Farm to warrant good and marketable title, disclose total loss and salvage histories on motor vehicles, obtain salvage titles where required by law and to conduct its business in a fair and non-deceptive manner. These duties extend to indirect purchasers.

85.     State Farm, in violation of Ohio law, breached these duties.

86.     State Farm, in breaching these duties, violated the Ohio Commercial Code, the CSPA, the common law and Ohio public safety laws, including R.C. §§ 4505.11(C), and 4505.19(A)(5). The duties imposed by these statutes and the common law are intended for the safety and protection of others.

18

87.     State Farm's failure to comply with these Ohio laws constitutes negligence *per se.*

88.     It was foreseeable that State Farm's title laundering scheme would result in the ultimate purchase of a masked "total loss" or salvage vehicle by unwitting Ohio consumers like Ms. Thornton and class members.

89.     Ms. Thornton and class members have suffered damages as a direct and proximate result of State Farm's negligence.

90.     The damages suffered by Ms. Thornton and class members were foreseeable by State Farm.

**Eighth Claim for Relief**
(Negligent Misrepresentation)

91.     State Farm was under a duty disclose total loss and salvage histories on motor vehicles, obtain salvage titles where required by law and to conduct its business in a fair and non-deceptive manner. These duties extend to indirect purchasers.

92.     State Farm breached these duties.

93.     It was foreseeable that State Farm's title laundering scheme would result in the ultimate purchase of a masked "total loss" or salvage vehicle by unwitting Ohio consumers like Ms. Thornton and class members.

94.     Ms. Thornton and class members have suffered damages as a direct and proximate result of State Farm's negligence.

95.     The damages suffered by Ms. Thornton and class members were foreseeable by State Farm.

19

**Ninth Claim for Relief**
(Deceptive Trade Practices)

96.     By selling salvage vehicles without obtaining the required

salvage titles, State Farm violated R.C. 4165.02(A), prohibiting deceptive

trade practices.

97.     Specifically, State Farm engaged in the following deceptive

trade practices prohibited by R.C. § 4165.02(A):

> (7) Representing that goods or services have sponsorship,
> approval, characteristics, ingredients, uses, benefits, or quantities
> that they do not have or that a person has a sponsorship,
> approval, status, affiliation, or connection that the person does
> not have;
>                                     ***
> (9) Representing that goods or services are of a particular
> standard, quality, or grade, or that goods are of a particular style
> or model, if they are of another.

98.     State Farm committed these deceptive trade practices in the

course of its business.

99.     State Farm's deceptive trade practices damaged Ms.

Thornton and other class members.

100.    Ms. Thornton and other class members are entitled to

damages, injunctive relief, and attorney's fees, pursuant to R.C. § 4165.03.

**Tenth Claim for Relief**
(Declaratory Judgment)

101.    Ms. Thornton and class members seek a declaration of their rights with respect to State Farm's title laundering scheme, specifically a declaration that State Farm's failure to comply with Ohio law and applicable salvage title laws constitutes fraud, negligence, negligence *per se*, an unfair and deceptive practice, and a violation of the Ohio CSPA, that its conduct violates public policy, rendering the laundered title transfers void as against public policy, that it has breached the warranty of title given in connection with the transfer of the salvage vehicles, that it has breached the warranty of merchantability and duty of good faith under the UCC given in connection with the transfer of the salvage vehicles, that it has breached the warranties implied by common law given in connection with the transfer of the salvage vehicles, that its failure to obtain salvage titles constituted negligent misrepresentation, and requiring disgorgement to class members of all  monies received in connection with this title laundering scheme.

102.    There is an actual controversy between the parties as fully set forth within this Complaint, and declaratory relief is appropriate pursuant to 28 U.S.C. §§ 2201 and 2202.

**Class Allegations**

103.    Pursuant to Civ. R. 23(b)(3) of the Federal Rules of Civil Procedure Ms. Thornton brings this action on her own behalf and that of a class of other persons similarly situated.

104.    The class is composed of all Ohio residents who have been sent notice of their entitlement to participate in State Farm's settlement with the Ohio Attorney General; who have not opted into the AG settlement; and who have not filed an insurance claim for a personal injury sustained while an occupant of a vehicle included in the AG settlement.

105.    On information and belief the proposed class contains hundreds of individuals and is so numerous that joinder of all members would be impracticable.  The exact size of the proposed class and the identity of the members thereof is ascertainable from State Farm's business records and state title records.

106.    There is a community of interest among the members of the proposed class in that there are questions of law and fact common to the proposed class that predominate over questions affecting only individual members.  These questions include, *inter alia,* whether State Farm failed to comply with state title laws regulating the documentation of ownership after "total loss" settlements; whether State Farm intended to defraud ultimate purchasers of vehicles it obtained ownership of after

paying "total loss" settlements; whether State Farm's failure to comply with state "salvage" title law constitutes negligence or negligence *per se*; whether State Farm's title laundering scheme is unfair or deceptive; whether State Farm's conduct violates state public policy; whether State Farm breached the warranty of title, and/or implied warranties under the UCC and common law; and the amount of damages State Farm should pay to injured class members.

107.    Proof of a common set of facts will establish State Farm's liability, and the right of each member of the class to recover.

108.    Ms. Thornton's claims are typical of those of the class she seeks to represent, and she will fairly and adequately represent the interests of the class.  Ms. Thornton is represented by counsel competent and experienced in both consumer protection and class action litigation.

109.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Virtually all of the class members were unaware that they were driving "total loss" or "salvage" vehicles until so notified by the Ohio Attorney General, because State Farm hid those material facts from them.  The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual class members against State Farm, and would establish incompatible standards of conduct for State Farm.

**Prayer for Relief**

WHEREFORE, Ms. Thornton respectfully prays for relief as follows:

a)      For an order certifying this case as a class action;

b)      For an order finding and declaring that State Farm's acts and practices as challenged herein are unlawful as alleged in Counts I-X;

c)      For an order preliminarily and permanently enjoining State Farm from engaging in the practices challenged herein;

d)      For an order of restitution and/or disgorgement in an amount to be determined at trial, which amount is at least equal to all sums collected by State Farm in connection with its title laundering scheme;

e)      For the declaratory relief requested above;

f)      For compensatory damages in an amount to be determined at trial, which amount is at least equal to the difference between the amounts class members paid for their undisclosed "total loss" or "salvage" vehicles and the actual market value of those vehicles;

g)      For punitive damages as permitted by law;

h)      For pre-judgment interest to the extent permitted by law;

i)      For an award of attorneys' fees, costs and expenses incurred in the investigation, filing and prosecution of this action pursuant to the CSPA, the Deceptive Trade Practices statute, and/or any other applicable provision of law; and

k)      For such other and further relief as the Court may deem just and proper.

Respectfully submitted,


*/s/ Ronald Frederick*
Ronald I. Frederick (#0063609)
Edward H. Kraus (#0037201)
Ronald Frederick & Associates, LLC
55 Public Square, Suite 1300
Cleveland, Ohio 44113-1971
(216) 781-3434 (phone)
(216) 781-1749 (fax)
RonF@ClevelandConsumerLaw.com


John Roddy (*pro hac vice motion pending)*
Gary Klein
Elizabeth Ryan
Roddy Klein & Ryan
727 Atlantic Avenue, 2nd Floor
Boston, Massachusetts 02111
roddy@roddykleinryan.com

## JURY DEMAND

Plaintiff hereby demands a trial before the maximum number of jurors allowed.

*/s/Ronald Frederick*
Ronald I. Frederick (#0063609)