**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Angela-Crystal Thornton** | ) | **CASE NO. 1:06-cv-00018** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **State Farm Mutual Auto Insurance** | ) | |
| **Company, Inc.** | ) | **Memorandum Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") has filed a Motion to Dismiss Plaintiff's Third Amended Complaint.  (Doc. 29).  This case arises out of State Farm's failure to obtain a salvage title for a vehicle that Angela-Crystal Thornton later purchased.  For the reasons that follow, the motion is GRANTED in Part and DENIED in Part.

**FACTS**

Thornton alleges the following in her Complaint.  When insurers declare a vehicle a total loss they must obtain a salvage title under Ohio law.  The salvage title places subsequent purchasers of the vehicle on notice of the vehicle's status.  Between 1997 through 2003, State

1

Farm laundered the titles of at least 32,000 total loss vehicles by reselling them to third parties without obtaining a salvage title. The salvage vehicles eventually surfaced in the consumer market without a salvage title. This scheme allowed State Farm and direct purchasers to profit by selling vehicles that would otherwise have little or no value to unwitting consumers at full market value. By masking titles State Farm also placed the general public at risk, since salvage vehicles may be unsafe.

State Farm was aware of problems with obtaining salvage titles as early as 1998. In 1998 the Attorney General for the State of Indiana brought suit against State Farm. State Farm agreed to a consent judgment that required it to buy back all masked salvage vehicles and to reimburse the interest and insurance expenses incurred by certain Indiana consumers. State Farm also agreed to an injunction requiring it to obtain salvage titles for all Indiana vehicles it declared a total loss.

On October 6, 2001, Thornton purchased a 1997 Honda Accord for $15,450. Thornton's title did not indicate that the car was a salvage vehicle. Prior to her purchase, the vehicle was damaged so extensively that a previous owner was paid a total loss settlement and State Farm took ownership of the car. State Farm never obtained a salvage title for the car and instead sold the car to a salvage dealer. The Accord was ultimately sold to Thornton with a clean title.

Thornton's Accord was one of over 32,000 vehicles that State Farm identified as having titling issues. To resolve these issues State Farm entered into an Assurance of Voluntary Compliance (the "AVC") with the Attorneys General of 49 states in 2005. Pursuant to the AVC, State Farm agreed to pay consumers who came into possession of the vehicles between 20-50% of the present NADA "blue book" value in exchange for a release of liability.

2

Thornton discovered that her vehicle had previously been declared a total loss through a September 14, 2005 letter from the Ohio Attorney General.  The letter explained that State Farm was unable to confirm that a salvage title was obtained for Thornton's vehicle.  State Farm would notify the Ohio Bureau of Motor Vehicles (the "BMV") that the title should be branded as salvage and agreed to pay Thornton $1,650 based on her vehicle's NADA blue book value of $6,600.  The letter asked that the claim form be completed and returned by November 18, 2005.  It further explained that by cashing the check "you will be releasing State Farm from any liability with respect to the branding of the title . . . except for claims for direct physical bodily injury . . . ."  The letter concluded with an explanation that Thornton's vehicle could not be resold without full disclosure that the vehicle needs a salvage title and that any attempt to do so could be a violation of the law.  Thornton received another letter from the Ohio BMV on October 28, 2005.  That letter explained that the vehicle could not be resold or operated on public roads if it had a salvage title.  The letter described an expedited procedure for receiving a "rebuilt salvage" title which would allow the vehicle to be sold or operated.  If Thornton failed to obtain a rebuilt salvage title by January 31, 2006, her current title would be "automatically canceled and replaced with a salvage title."

According to Thornton, only 392 of over 1,000 eligible Ohio consumers elected to participate in the settlement.  Thornton brings an action on her own behalf and also seeks to represent a class of Ohioans who did not submit claims under the AVC.  She claims that class members' vehicles have been branded as salvage and cannot be operated or sold without a rebuilt salvage title.  Thornton and other class members who financed their vehicles may owe substantial amounts on loans for vehicles they cannot operate or sell.

3

Thornton asserts claims against State Farm for Fraud, Violation of the Ohio Consumer Sales Practices Act, Breach of Warranty of Title, Breach of Warranty of Merchantability and Duty of Good Faith under the UCC, Breach of Common Law Implied Warranties, Consequential and Equitable Relief for Void Transfer, Negligence *Per Se*, Negligent Misrepresentation, Deceptive Trade Practices, and Declaratory Judgment.

State Farm has filed a Motion to Dismiss all of Thornton's claims.

**STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). A claim is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir. 1989).  Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.  However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993).

"In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)).  Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead*

4

*v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

**<u>DISCUSSION</u>**

The Court will address Thornton's claims in the same order they were addressed by the parties.

<u>OHIO CONSUMER SALES PROTECTION ACT (COUNT 2)</u>

State Farm argues that Thornton's Ohio Consumer Sales Protection Act (the "OCSPA") claim is barred for the following reasons: 1) the claim is barred by the OCSPA statute of limitations; 2) the OCSPA does not apply to transactions involving insurance companies; and 3) Thornton did not engage in a "consumer transaction" with State Farm as required by the OCSPA.

1.      <u>Ohio Consumer Sales Protection Act-Statute of Limitations</u>

The statute of limitations under the OCSPA is set as follows:

> An action under [the OCSPA] may not be brought more than two years after the occurrence of the violation which is the subject of suit, or more than one year after the termination of proceedings by the attorney general with respect to the violation, whichever is later.

R.C. § 1345.10(C).

Thornton purchased her vehicle on or about October 6, 2001, but did not bring suit until January 4, 2006.  Because more than two years passed between the purchase and the Complaint, State Farm argues that the statute of limitations has lapsed.  Thornton responds that her claim is timely for a number of reasons.  First, Thornton argues that the statute of limitations only began to run when she was notified that her title was defective.  Second, State Farm and the state attorneys general executed the AVC on January 5, 2005.  Thornton thus argues that her complaint was filed within "one year after the termination of proceedings by the attorney

general."  Third, Thornton argues that the statute of limitations was equitably tolled by State

Farm's alleged fraudulent concealment.  Fourth, Thornton argues that the statute of limitations

was tolled by a class action filing in Illinois state court.

       a.      The Date of the Occurrence of the Violation

The Court will first address the date of the occurrence of the violation.  State Farm

explains that it allegedly violated the law when it failed to obtain a branded title to Thornton's

vehicle or sold the vehicle with a clean title.  This violation necessarily occurred prior to October

6, 2001, when Thornton purchased the vehicle from an unidentified third party.  According to

State Farm, Thornton was thus required to bring her claim at least by October 6, 2003. As for the

attorney general letters, State Farm notes that the discovery rule does not apply to claims under

the OCSPA.  *See Rosenow v. Shutrump & Assocs.*, 839 N.E.2d 82, 86-87 (Ohio App. 2005);

*Sproles v. Simpson Fence Co.*, 649 N.E.2d 1297, 1302 (Ohio App. 1994).  State Farm thus

argues that the letters merely notified Thornton of the original occurrence.

Thornton admits that the discovery rule does not apply to her claims, and focuses instead

on State Farm's settlement and notice to the BMV as an independent basis for her action.  She

argues that the occurrence of the violation was when "State Farm notified the Ohio BMV that

their titles were defective as a result of its failure to obtain salvage titles and that the BMV

'needed' to now re-brand those titles as salvage.  At that point the BMV placed a 'block' on the

titles, prohibiting class members from driving or transferring their vehicles, making them

essentially worthless."  This occurred no earlier than September of 2005.  Along these lines, her

Complaint alleges that the unfair or deceptive acts of State Farm included "misleading or

otherwise misinforming consumers, either directly or indirectly, about the vehicles' title and

6

damage histories" and "causing class members' vehicles to become essentially worthless as result of . . . the subsequent invalidation of the existing titles . . . ." (Comp. ¶¶ 46(f),(i)).  Taking these allegations of the Complaint as true and construing them liberally in favor of Thornton, the Court agrees that she alleges deceptive acts that occurred within the limitations period.[1] Accordingly, State Farm's motion is denied with respect to the statute of limitations.

      b.      Tolling as a Result of Proceedings by the Attorney General

The Court will also address Thornton's tolling arguments, since tolling impacts Thornton's other theories of liability under the OCSPA.  Thornton claims that the OCSPA statute of limitations was tolled by the AVC.  The AVC is an agreement between State Farm and, among others, the Ohio Attorney General.  The threshold issue is whether the process of entering into the AVC qualifies as a "proceeding by the attorney general" under R.C. § 1345.10(C).  State Farm argues that the AVC is not a proceeding by the attorney general because it was a voluntary agreement that was initiated by State Farm.  Both parties can point to an Ohio Common Pleas decision to support their argument.  In *Kendall v. State Farm*, the Cuyahoga County Court of Common Pleas held that "the Court does not find that the assurance of voluntary compliance falls within the parameters of an attorney general proceeding as defined in Chapter 1345 of the Ohio Revised Code."  *Kendall v. State Farm Mut. Auto. Ins. Co.*, CV-06-588389 (Cuyahoga Ct. C.P. June 19, 2006).  *Kendall* is a docket entry and does not provide any further analysis of the issue.

---

[1]      The Court finds it interesting that State Farm, in support of its Motion to Strike Class Allegations, argues that many of the vehicles involved in the AVC may not have required a salvage title at all.  State Farm nonetheless found it appropriate to notify the BMV that forced those vehicles to be branded as salvage.

Thornton responds with *Eckhart v. State Farm*, wherein the Lucas County Court of Common Pleas held that the AVC did qualify as a proceeding under R.C. § 1345.10(C).  CI 05-7145 (Lucas Ct. C.P. Oct. 2, 2006).  The *Eckhart* Court first noted that the "OCSPA neither defines what qualifies as a 'proceeding', nor clarifies whether the proceeding must be in response to a specific consumer complaint, or to the supplier's practices in general."  *Id.* (citing 2 White, Consumer Law, Consumer Sales Practices Act, (Ed.2006), Section 2:125); *see also* 1-3 Anderson's Ohio Consumer Law § 3.31 (2005) (explaining that "[t]he statute gives no indication what kind of 'proceedings' are contemplated").  The *Eckhart* Court continued that under R.C. § 1.42 undefined "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage."  In reaching its conclusion that the AVC constituted a proceeding, the *Eckhart* Court reasoned as follows:

> First, Black's Law Dictionary defines a "proceeding", in part, as "* * * any procedural means for seeking redress from a tribunal or agency * * *."  Black's Law Dictionary (8th Ed. 2004).  Second, a common sense reading of R.C. 1345.06 and 1345.07, when read together, appear to consider the attorney general's investigations to be proceedings.
>
> Pursuant to R.C. 1345.06 and R.C. 1345.07, the attorney general has the power to investigate alleged violations, either of his own volition or in response to consumer complaints.  R.C. 1345.06(A).  During his investigation, the attorney general may negotiate and accept a conditional, written, assurance of voluntary compliance from a supplier in lieu of pursuing further action.  R.C. 1345.06(F).  If a supplier later violates the conditions set forth in the assurance of voluntary compliance, or if she believes it is in the public's best interest, the attorney general may reopen the investigation.  R.C. 1345.06(F).  Finally a court may accept and enter an assurance of voluntary compliance as a consent judgment against the supplier.  *Id.*

*Eckhart*, CI 05-7145 at 4-5.

In sum, neither party has submitted binding authority as to what encompasses a "proceeding by the attorney general."

8

A second related issue is whether the attorney general proceedings must be initiated prior to the expiration of the standard two-year limitations period.  Two unreported Ohio Court of Appeals cases reach differing conclusions.  In *Beck v. The Trane Co.*, the plaintiffs did not file their lawsuit or their claim with the attorney general until well after the expiration of the two-year limitations period.  Nos. C-890610, C-890623, 1990 Ohio App. LEXIS 5614, *11-12 (Dec. 19, 1990).  The *Beck* Court nonetheless allowed the claims to go forward on the basis that they were filed within a year of the termination of proceedings by the attorney general.  *Id*. at 12.  In doing so the Court implicitly held that the attorney general proceedings need not be initiated prior to the expiration of the two-year limitations period.  *Id.*; *cf., Eckhart*, CI 05-7145 (finding that a claim was filed within a year of the termination of attorney general proceedings without discussing whether the proceedings were initiated within two years of the violation).

In *Adams v. Primax Window Co.*, the plaintiffs had problems with their windows in 1993 but failed to file a complaint in court or with the attorney general within two years.  No. CA99-01-004, 1999 Ohio App. LEXIS 3640, * 6 (Aug. 9, 1999).  The plaintiffs filed a lawsuit in 1998, less than a year after the termination of an investigation that began after the expiration of the standard two-year statute of limitations.  *Id*.  The *Adams* Court concluded that the statute of limitations is only extended by attorney general proceedings that are initiated prior to the expiration of the two-year limitations period:

> Surely, R.C. 1345.10(C) should not be interpreted to mean that any time a consumer files a complaint with the attorney general, the statute of limitations regarding that complaint begins anew. If that was the rule, the statute of limitations would be indefinite.

*Id*.

Taking the reasoning of *Primax* one step further, the Court agrees.  It would be

9

nonsensical to have a statute of limitations that could be restarted whenever a consumer files a complaint with the attorney general, regardless of the outcome.  However, the problem cannot be solved by reference to the language of R.C. § 1345.10(C), which provides no indication that the "proceeding by the attorney general" must be initiated before the expiration of the standard two year limitations period.  Rather, the only way to avoid an indefinite statute of limitations is through a proper understanding of a "proceeding by the attorney general."

The Court can determine what is contemplated by a "proceeding by the attorney general" through a detailed review of R.C. § 1345.10(C) in concert with other related statutory provisions. The powers of the attorney general to enforce violations of the OCSPA are set out in R.C. § 1345.06 and R.C. § 1345.07.  Section 1345.06 provides for "Investigatory powers of the attorney general."  It explains that the attorney general may investigate possible violations of Chapter 1345 and gives the mechanisms that the attorney general may employ in conducting the investigation.  R.C. §1345.06(B)-(E).  As the *Eckhart* Court noted, the attorney general may afford the supplier an opportunity to cease and desist or enter into a written assurance of voluntary compliance.  R.C. §1345.06(F).  However, if compliance cannot be brought about in a voluntary manner, R.C. § 1345.07 provides for "Remedies available to the attorney general upon violation."  Under Section 1345.07, the attorney general "may bring any of the following:" 1) An action to obtain a declaratory judgment; 2) an action to obtain a TRO, preliminary and permanent injunction, and fines; or 3) a class action on behalf of consumers.  R.C. §1345.07(A). Importantly, "[n]o action may be brought by the attorney general under this section to recover for a transaction more than two years after the occurrence of a violation."  R.C. § 1345.07(E).

The Court finds that the attorney general's own investigation under R.C. §1345.06—even

one that results in an AVC—cannot qualify as a "proceeding by the attorney general."  The statute of limitations is only tolled when the investigation ripens to the point that the attorney general seeks a remedy under R.C. § 1345.07.  This understanding of "proceeding" is reasonable, since the "proceeding" must be "by the attorney general" and the attorney general does not seek redress anywhere until an actual remedy is sought.  Moreover, this is the only reading of "proceeding by the attorney general" that does not render R.C. § 1345.10(C) nonsensical.  The General Assembly certainly did not intend to announce a standard two-year statute of limitations in the first half of a sentence while negating that statute of limitations entirely in the second half.  Although not a model of clarity, the General Assembly obviously assumed that a "proceeding by the attorney general" would be read as an action under Section 1345.07 and thus incorporated the two-year limitation period for such actions under Section 1345.07(E).

Thus, the initial action against a supplier, whether initiated by a consumer or by the attorney general, must be initiated within two years under Sections 1345.10(C) and 1345.07(E).  If an action is filed by the attorney general within two years, a consumer has an additional year after the conclusion of the proceedings by the attorney general to file a consumer action.  R.C. § 1345.10(C).  Here, the attorney general did not file an action under Section 1345.07 within two years of the occurrence of the violation.  Thornton's OCSPA claim is not tolled under 1345.10(C).[2]

---

[2]     However, the Court rejects State Farm's argument that the "proceeding" must be initiated by a consumer complaint.  State Farm's only authority for this argument is the fact that a number of courts have allowed cases to go forward where the consumer did initiate the attorney general proceeding with a complaint.  However, there is no language in R.C. § 1345.10(C) to indicate that the proceeding must be initiated by the consumer.  In fact,

c.    Equitable Tolling

Thornton next argues that her claim is subject to equitable tolling.  "[U]nder limited circumstances Ohio law recognizes that the concealment of a cause of action can toll the statute of limitations."  *Phelps v. Lengyel*, 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002).  One such circumstance is fraudulent concealment.  *Browning v. Levy*, 283 F.3d 761, 770 (6th Cir. 2002).  State Farm notes, and Thornton generally agrees, that fraudulent concealment requires some affirmative act by the defendant designed to prevent discovery of the cause of action.  *Id.*; *Phelps*, 237 F. Supp. 2d at 836.

In *Doe v. Archdiocese of Cincinnati*, the Ohio Supreme Court explained that plaintiffs must "establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit."  849 N.E.2d 268, 279 (Ohio 2006).  Thornton first claims that "State Farm *affirmatively concealed* its wrongdoing by selling a salvage vehicle with a non-salvage title." (emphasis in original).  However, any "concealment" or "masking" of titles occurred at the time State Farm failed to obtain a salvage title and sold the vehicle with a clean title.  From that point forward, Thornton can only point to inaction.  She claims that State Farm "elected not to issue a press release or notify affected consumers of its malfeasance."  However, "[c]oncealment by mere silence is not enough.  There must be some trick or contrivance intended to exclude suspicion and prevent inquiry."  *Browning*, 283 F.3d at 770 (quoting *Pinney Dock & Transp. Co.*

related provisions of the OCSPA provide that the attorney general may investigate "[i]f, *by his own inquiries* or as a result of complaints, the attorney general has reasonable cause to believe that a person has engaged or is engaging in an act or practice that violates" Chapter 1345.  R.C. § 1345.06(A) (emphasis added); R.C. § 1345.07(A); *see also Eckhart*, CI 05-7145; *Weber*, CV 2005 1227.

*v. Penn Cent. Corp.*, 838 F.2d 1445, 1467 (6th Cir. 1988)); *see also Phelps*, 237 F. Supp. 2d at

836 n.5.  Equitable tolling does not apply to Thornton's claims because she cannot allege any

subsequent and specific actions by State Farm that prevented her from bringing suit.

Thornton cites *Heskett v. Paulig* for the principle that equitable estoppel may be based on

silence when there is a duty to disclose.  722 N.E.2d 142, 145-46 (Ohio App. 1999).  Thornton

acknowledges that equitable estoppel is distinct from equitable tolling of a statute of limitations.

Nonetheless, she claims, again based on *Heskett*, that "'other principles of Ohio law on estoppel

are instructive' when analyzing equitable estoppel to plead the statute of limitations."  Surreply

at 5 (citing *Heskett*, 722 N.E.d at 146).  However, *Heskett* had nothing to do with equitable

tolling through fraudulent concealment.  The Court is not persuaded that it should abandon the

established principles of equitable tolling based on other unrelated estoppel doctrines.

    d.      Tolling as a Result of Another Class Action

Thornton also argues that her OCSPA claim was tolled by the pendency of an earlier

class action filed in Illinois state court.  *Gridley v. State Farm Mut. Auto Ins. Co.* was originally

filed on June 19, 2000, and alleged violations of Illinois's counterpart to the OCSPA based on

similar issues with salvage titles.  840 N.E.2d 269 (Ill. 2005).  The *Gridley* plaintiff sought to

represent a class of "all persons in the United States who purchased an automobile which was

previously declared a 'total loss' by State Farm, and for which State Farm failed to obtain a

salvage title."  *Gridley*, 840 N.E.2d at 272.

State Farm argues that Ohio courts do not recognize other states' class actions as tolling

statutes of limitations for Ohio class actions.  The parties do not dispute that Ohio tolling

principles apply to Thornton's Ohio state law claims.  *See Wyser-Pratte Mgmt. Co. v. Telxon*

13

*Corp.*, 413 F.3d 553, 567 (6th Cir. 2005). Ohio initially looked unfavorably upon any attempt to toll an Ohio statute of limitations by reference to any foreign action. *See Howard v. Allen*, 283 N.E.2d 167, 169 (Ohio 1972). However, in the years following *Howard* the United States Supreme Court specifically addressed when a federal statute of limitations would be tolled by an earlier-filed class action. In *American Pipe & Constr. Co. v. Utah*, the Supreme Court held that the filing of a class action tolls the statute of limitations "as to all asserted members of the class . . . ." 414 U.S. 538, 554 (1974). In *Crown, Cork & Seal Co. v. Parker*, the Supreme Court clarified that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." 462 U.S. 345, 354 (1983). "At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Id.*

The Ohio Supreme Court recently reviewed these decisions and concluded that "[m]uch has changed since *Howard* was decided." *Vaccariello v. Smith & Nephew Richards, Inc.*, 763 N.E.2d 160, 162 (Ohio 2002). The Ohio Supreme Court considered the reasoning of *American Pipe* and *Crown & Cork*, as well as the similarities between the Ohio and Federal class action rules, and concluded as follows:

> We hold that the filing of a class action, whether in Ohio or the federal court system, tolls the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. We modify *Howard* to the extent that it conflicts with this holding.

*Id.* at 163. Both parties argue that *Vacceriello* supports their position. Thornton believes that the *Vacceriello* Court wished to give class action tolling the full reach adopted by the federal courts. State Farm notes that *Vacceriello* only modified *Howard* "to the extent it conflicts with this holding"—i.e., only with respect to class actions brought in federal rather than state court.

14

The Court agrees with State Farm.  Simply put, *Howard* was only modified "to the extent that it conflicts with t[he] holding" that "the filing of a class action . . . in Ohio or the federal court system . . . tolls the statute of limitations . . . ."  *Id.*; *see also Ruble v. Ream*, No. 03CA14, 2003 Ohio App. LEXIS 5290, *20 (Ohio App. Oct. 29, 2003) (explaining that "we do not agree with appellant that *Vaccariello* effectively overruled *Howard*").  *Vacceriello* merely addressed the less controversial idea of allowing class actions from a single foreign jurisdiction with similar procedural rules to toll an Ohio statute of limitations.  Even this modest holding was only able to secure a bare 4-3 majority.  The Court is thus wary of extending *Vacceriello* from one foreign jurisdiction to an additional 49 foreign jurisdiction with divergent class action rules.  Because the *Gridley* complaint was filed in Illinois, it cannot toll the statue of limitations for Thornton's OCSPA claim.

> 2.       Ohio Consumer Sales Protection Act—Insurance Companies

State Farm also argues that OCSPA does not apply to its actions in titling total loss vehicles.  The OCSPA only applies to suppliers who commit unfair or deceptive acts in connection with a "consumer transaction."  R.C. § 1345.02(A).  A consumer transaction "does not include transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers."  R.C. § 1345.01(A).  R.C. § 5725.01 provides, *inter alia*, the following:

> "Insurance company" includes every corporation, association, and society
> engaged in the business of insurance of any character, or engaged in the business
> of entering into contracts substantially amounting to insurance of any character,
> or of indemnifying or guaranteeing against loss or damage, or acting as surety on
> bonds or undertakings.

R.C. § 5725.01(C).

The Court agrees with Thornton that this insurance company exception does not provide a blanket exemption for all activities conducted by an insurance company.  Rather, the Court must make a practical inquiry into whether State Farm was actually operating as an insurance company in the transaction at issue.  *See Drozeck v. Lawyer Title Ins. Co.*, 749 N.E.2d 775, 779 (Ohio App. 2000); *Hofstetter v. Fletcher*, 905 F.2d 897, 906 (6th Cir. 1988).  Even State Farm's preferred case takes this course.  *Chestnut v. Progressive Cas. Ins. Co.*, No. 84376, 2006 Ohio App. LEXIS 1920 (Ohio App. 2006) (noting that "Ohio courts have held that the CSPA does not apply to insurance companies conducting insurance transactions").

Thus, the critical issue is whether State Farm's activities in declaring a vehicle a total loss and then reselling the vehicle amount to engaging in the business of insurance.  Both parties can point to Ohio cases that support their position.  State Farm points the Court to the Eighth District Court of Appeals decision of *Chestnut v. Progressive Cas. Ins. Co.*, 2006 Ohio App. LEXIS 1920.  The *Chestnut* Court held as follows:

> In the instant case, Progressive obtained a title for a vehicle it declared a total loss before selling it at an auto auction. This was clearly done in Progressive's capacity as an insurance company and is not subject to the CSPA.

*Id*. at 13.  The Lake County Court of Common Pleas reached a similar conclusion in *Mowls v. State Farm Mut. Auto. Ins. Co*., No. 05CV002931 (Ct. Com. Pl. Aug. 9, 2006).

Thornton finds support in the Common Pleas decisions of *Weber v. State Farm Mut. Auto. Ins. Co.*, CV 2005 1227 (Allen Ct. Com. Pl. Aug. 10, 2006), and *Eckhart*, *supra*.  *Weber* distinguished *Chestnut* on the basis that taking title and ownership clearly "constitutes the 'insurance transaction,'" while "[t]he decision of what to do with the vehicle is now based on a business decision and no longer involves the insured or the policy between the insured and the

16

insuring company." *Eckhart* distinguished *Weber* on the same basis.

After reviewing these cases, the Court finds that it cannot announce a rule of law that any insurance company that sells a total loss vehicle is "engaged in the business of insurance."[3] As these cases make clear, such an inquiry requires specific information as to how State Farm typically conducts its activities in disposing of total loss vehicles.  Accordingly, Section 1345.02(A) does not justify dismissal.

    3.       <u>Ohio Consumer Sales Protection Act—Consumer Transaction</u>

State Farm also argues that it did not engage in a consumer transaction with Thornton because Thornton did not purchase the vehicle directly from State Farm.  The Court agrees with Thornton that it is unnecessary for her to purchase her vehicle directly from State Farm. Thornton alleges that State Farm sold her car to a salvage dealer and it was eventually sold to her.  The OCSPA prohibits a "supplier" from committing an unfair or deceptive act "in connection with a consumer transaction."  R.C. § 1345.02(A).  A supplier includes those "engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer."  R.C. § 1345.01(C).  Ohio courts thus hold that a direct customer relationship is not required under the OCSPA.  *E.g., Garner v. Borcherding Buick, Inc.,* 84 Ohio App. 3d 61, 64 (1992).

In sum, Thornton's OCSPA claim will not be dismissed.

---

[3]     The Court rejects Thornton's contention that the insurance exception only applies to claims by the insurance company's customer.  The focus is on the particular transaction.  Here, the transaction at issue—the total loss and titling of the vehicle—is related to a policy between State Farm and its customer.

<u>UCC BREACH OF WARRANTY CLAIMS (COUNTS 3 & 4)</u>

State Farm makes a number of arguments that Thornton's Ohio Commercial Code

("UCC") claims are barred: 1) all of the UCC claims are time-barred by the applicable statute of

limitations; 2) Thornton has not stated a claim for breach of the warranty of title; and 3)

Thornton has not stated a claim for breach of the duty of good faith.

Because the issue is dispositive of all of the UCC claims, the Court will first address the

statute of limitations.  State Farm asserts that Thornton's claims are barred by the statute of

limitations set forth in R.C. § 1302.98.  Section 1302.98 reads in relevant part as follows:

> (A) An action for breach of any contract for sale must be commenced within four
> years after the cause of action has accrued. By the original agreement the parties
> may reduce the period of limitation to not less than one year but may not extend
> it.
>
> (B) A cause of action accrues when the breach occurs, regardless of the aggrieved
> party's lack of knowledge of the breach. A breach of warranty occurs when tender
> of delivery is made, except that where a warranty explicitly extends to future
> performance of the goods and discovery of the breach must await the time of such
> performance, the cause of action accrues when the breach is or should have been
> discovered.

R.C. § 1302.98.

State Farm argues that the plain language of the R.C. § 1302.98(B) establishes that the

four-year limitations period under R.C. § 1302.98(A) began running when Thornton originally

purchased her vehicle on October 6, 2001, thus expiring on October 5, 2005.  *See Allis-Chalmers*

*Credit Corp. v. Herbolt*, 479 N.E.2d 293, 298-99 (Ohio App. 1984) (explaining that "[t]ender, as

used in the statute of limitations relating to an action for breach of contract for the sale of goods,

refers to an offer as if in fulfilment of contractual obligations even though a defect in the goods

may exist when measured against the contract.").  The Court agrees.  Unlike the OCSPA claim,

which can be based on a later-occurring deceptive act, the tender of delivery of the vehicle and its title necessarily occurred on or before October 6, 2001.

Thornton nonetheless claims that her filing was timely for four reasons:  1) "State Farm's concealment of its salvage masking scheme invokes equitable tolling under the UCC statute of limitations;" 2) "the claims are timely based on the discovery rule applicable to a tort-based breach of warranty claim;" 3) State Farm "caused substantial injury as of its September 2005 notice to the BMV that affected vehicles needed to be re-branded with salvage titles;" and 4) "the *Gridley* class action [lawsuit] tolled [Thornton's] claims."  The Court has already addressed and rejected Thornton's first and fourth arguments with respect to the OCSPA and its conclusion is the same for her UCC claims.[4]

The Court also rejects Thornton's argument that her breach of warranty claim actually lies in tort, and is therefore subject to the discovery rule.  Thornton asserts that "Ohio courts have evaluated UCC based breach of implied warranty claims as tort-based claims when there is no privity between the parties."  However, all of the cited cases involved tort claims.  Thornton appears to argue that UCC implied warranty claims—i.e., contract claims—are equivalent to tort implied warranty claims, apparently because both include the words "implied warranty."  This argument is without merit.  In *International Periodical Distributors v. Bizmart, Inc.*, 768 N.E.2d 1167, 1170 (Ohio 2002), the Ohio Supreme Court cited the official comments to the UCC, and noted that "the purpose of [R.C. 1302.98] is to introduce a uniform statute of limitations for sales

---

[4]    Indeed, it is not entirely clear that equitable tolling even applies to a UCC claim.  In *Beck v. Trane Co.*, Nos. C-890610, C-890623, 1990 Ohio App. LEXIS 5614 (Ohio Ct. App. Dec. 19, 1990), the appellate court held that the only exceptions to the UCC statute of limitations are those set out R.C. § 1302.98(D).

contracts..." *Id*. (Citing UCC §2-725, cmt.).  Thornton's UCC-based implied warranty claims

are thus, not surprisingly, subject to the statute of limitations set out in the UCC.  Accordingly,

the discovery rule does not apply to her UCC claims.[5]

Finally, Thornton's contention that State Farm actually tendered delivery in September,

2005 when it informed her she must obtain a salvage title is without merit.  As the Court

discussed earlier, Thornton took possession of her car and title, even if it was defective, in

October, 2001.  Although State Farm may have engaged in a deceptive act or made a

representation when it provided her with notice, the tender of delivery for both the vehicle and

the title occurred in 2001.

Accordingly, all of Thornton's UCC claims are barred by the statute of limitations.

<u>BREACH OF COMMON LAW IMPLIED WARRANTIES (COUNT 5)</u>

Thornton's fifth claim actually alleges a breach of common law implied warranties.  A

common law breach of implied warranty claim is a products liability theory that allows a

plaintiff to bring an action against a manufacturer for defects in a product that reduce the

product's value despite a lack of privity.  *LaPuma v. Collinwood Concrete,* 661 N.E.2d 714, 716

(Ohio 1996); *Chemtrol Adhesives, Inc. v. Am. Mfgs. Mut. Ins. Co.*, 537 N.E.2d 624, 634 (Ohio

1989).  "[T]here are virtually no distinctions between Ohio's 'implied warranty in tort' theory

---

[5]     Under the discovery rule, "a cause of action does not arise until the
plaintiff discovers, or by the exercise of reasonable diligence,
should have discovered, that he or she was injured by the wrongful
conduct of the defendant."  *Norgard v. Brush Wellman*, 766
N.E.2d 977, 979 (Ohio 2002).  Under R.C. § 1302.98(B), the
discovery rule is only applicable when a warranty explicitly
extends to future performance.  *Allis-Chalmers*, 479 N.E.2d at 301.
This limited scenario cannot apply here, as Thornton does not
allege an explicit warranty extending to future performance.

20

and the Restatement version of strict liability in tort . . . ."  *Chemtrol*, 537 N.E.2d at 632 (quoting *Temple v. Wean United, Inc.*, 364 N.E.2d 267, 271 (Ohio 1977)).  A common law implied warranty claim consists of the following elements: "(1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss."  *Wean*, 364 N.E.2d at 270.

State Farm contends that Thornton fails to state a claim because she does not allege any tangible defect in the vehicle.  Thornton's original opposition does not address State Farm's argument, but instead declares, without citation of any authority, that the failure to obtain a salvage title amounts to a defect in the vehicle.  In her surreply, Thornton changes course and argues that State Farm misapprehends her common law implied warranty claim.  Thornton claims that "State Farm breached the common law warranties that the vehicles they sold 'were of good and merchantable quality, that they were fit for ordinary purposes, and that they were free of major defects."  Again without citing any authority, she then posits that these common law warranty claims encompass the failure to obtain a salvage title.  However, Thornton cannot avoid the requirements of a cause of action by creatively renaming her claim.  The common law warranty claim recognized by Ohio law is "referred to . . . in various ways , including . . . breach of implied warranty of fitness for ordinary use [and] implied warranty . . . ."  *Wean*, 364 N.E.2d at 270.  In all events, it is a products liability type claim with the elements recited above. Because Thornton's Complaint does not allege a defect, the claim must be dismissed.

### CONSEQUENTIAL AND EQUITABLE RELIEF FOR VOID TRANSFER (COUNT 6)

The crux of Thornton's Sixth claim for relief is that State Farm's initial sale of a vehicle

without a salvage title is void under Ohio law, entitling her to restitution for the amount she paid

for the vehicle.  Thornton points to R.C. § 4505.11(C), which requires insurers such as State

Farm to surrender the original certificate of title and obtain a salvage title when the insurer

declares it economically impractical to repair a motor vehicle.  Under R.C. § 4505.19(A)(5),

"[n]o person shall . . . [k]nowingly obtain goods, services, credit, or money by means of a

certificate of title to a motor vehicle, which is required to be surrendered . . . ."  Whoever

violates R.C. §4505.19(A)(5) "shall be fined not more than five thousand dollars or imprisoned

in the county jail or workhouse not less than six months nor more than one year, or both, or in a

state correctional institution not less than one year nor more than five years."  R.C. §4505.19(B).

Thornton claims that the sale of a vehicle in violation of this statute is void under Ohio law.

State Farm seeks to dismiss the claim based on *The Commercial Credit Co. v. Schreyer*,

16 N.E. 808 (Ohio 1929), and *The Warren People's Market Co. v. Corbett & Sons*, 151 N.E. 51

(Ohio 1926).  Both of these cases held that a particular statutory violation did not invalidate the

underlying contract.  In *Schreyer*, the statute at issue made it unlawful to sell a motor vehicle

"unless the vendor or donor shall at or before such sale or gift execute in the presence of

witnesses a bill of sale in duplicate, delivering both copies to the purchaser."  166 N.E. at 810.

The courts below held that an initial sale of a vehicle to Seymour was void because these

procedures had not been followed.  The Ohio Supreme Court disagreed.  The purpose of the

statute was to create a special procedure for the registration and purchase of motor vehicles.  *Id*.

at 814.  The Court distinguished between statutes "which forbid certain contracts to be made, or

certain acts to be done[,] and those which proscribe a certain mode and manner of doing the act,

or the procedure to be followed in making the contract."  *Id*. at 811.  Because the statute fell into

the latter category, the Seymour contract was not void.  *Id*. at 811, 814.  In *Corbett* it was contended that a particular stock subscription that was in violation of Ohio's Blue Sky Law was also void.  151 N.E. 51, 52.  The Ohio Supreme Court there made the following observation:

> The test by which it is to be decided whether the act upon which a penalty is imposed is also absolutely prohibited, as indicated in the decisions quoted, is whether the act prohibited is detrimental to the welfare or morals of the public, or whether the prohibition is for the purpose either of raising revenue or simply regulating trade or business.

*Id*. at 54.  Because the purpose of the Blue Sky Law "was not to prohibit transactions in securities, but to throw safeguards around those transactions[,]" the note was not void.  *Id*. at 55.

State Farm argues that these cases stand for the proposition that a contract entered into in violation of a statute will not be held void unless the underlying statute expressly provides that contracts in violation of the statute are void.  The Court disagrees.  In both *Schreyer* and *Corbett* the statutes at issue were enacted by the General Assembly to regulate an otherwise legal activity.  The Ohio Supreme Court merely held that such general regulatory statutes would not void the underlying transaction.  *See McCullough Transfer Co. v. Virginia Sur. Co.*, 213 F.3d 440, 442 (6th Cir. 1954) (explaining, under Ohio law, that it does not "necessarily follow[] that a failure to comply with the provisions of a regulatory statute relating to insurance renders null and void a policy of insurance"). Both cases indicated, however, that a different result might be justified if the underlying acts were prohibited by the General Assembly because they were considered detrimental to the public welfare.

Later Ohio courts have recognized that "a contract may be void if it violates public policy, the legal principle which declares that one may not lawfully do that which has the tendency to injure the public welfare."  *Marsh v. Lampert*, 718 N.E.2d 997, 998 (Ohio App.

23

1998); *see also Bell v. Northern Ohio Tel. Co.*, 78 N.E.2d 42, 43 (Ohio 1948) (holding that "no

valid contract may be made contrary to statute").  In *Marsh*, a contract for a police sergeant to

retire in exchange for $4,000 from the employee at the top of the sergeant promotion list was

void in light of statutes that prohibit public employees from paying for a promotion or from

receiving payment from a subordinate for retiring.  *Marsh*, 718 N.E.2d at 998.

Here, Thornton alleges that State Farm's sale of total loss vehicles without the salvage

title required by Section 4505.11 is void in light of Section 4505.19(A)(5), which renders such

sales illegal.  Section 4505.11 sets out in great detail procedures to ensure that damaged vehicles

are either dismantled or receive a salvage title that prohibits their operation on public roads.

R.C. § 4505.11(A)-(D), (F).  Such a vehicle cannot be operated on public highways without an

inspection by the state highway patrol and the issuance of a "REBUILT SALVAGE" title.  R.C.

§ 4505.11(E).  Accordingly, the Court concludes that, like the statute in *Marsh*, the statutory

prohibition on the sale of total loss vehicles without a salvage title does not serve merely

regulatory purposes, but instead protects the public both from fraud and from vehicles which are

more likely to cause a hazard on public roadways.  Thus, a sale in violation of the statute may be

void and the motion to dismiss is not well taken.[6]

---

[6]     State Farm attempts to distinguish this case from *Marsh* because
"even if State Farm should have obtained a salvage title for the
vehicle prior to selling it, State Farm's contract to sell the vehicle
was not illegal in and of itself."  However, Section 4505.19(A)(5)
does not impose penalties for failing to obtain a salvage title, but
rather for receiving " goods, services, credit, or money"—i.e.,
contracting to sell—in exchange for a vehicle with a certificate of
title that should have been surrendered. State Farm's citation to the
unpublished opinion in *City of Cleveland v. Cleveland
Patrolman's Ass'n*, is similarly unavailing.  No. 76181, 2000 Ohio
App. LEXIS 2019 (May 11, 2000).  As State Farm points out, that

NEGLIGENCE PER SE (COUNT 7)

Thornton's Seventh Count alleges negligence *per se*. In general, "where a statute sets forth a positive and definite standard of care whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact, a violation of that statute constitutes negligence *per se*." *Sikora v. Wenzel*, 727 N.E.2d 1277, 1280 (Ohio 2000) (internal quotations omitted). Thornton bases her claims on three statutory enactments—the Ohio Commercial Code, the OCSPA and "Ohio public safety laws, including R.C. §§ 4505.11(C) and 4505.19(A)(5)" —and "the common law."

State Farm first contends that neither the UCC nor the OCSPA support a negligence *per se* claim because these statutes do not state a specific and affirmative statutory duty. Where a statutory duty is "defined only in abstract or general terms, leaving to the jury the ascertainment and determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase negligence *per se* has no application." *Hurst v. Ohio Dept. of Rehabilitation and Correction*, 650 N.E.2d 104, 106 (Ohio 1995) (internal quotation omitted). Thornton cannot respond with statutory language of the UCC or OCSPA that prohibits a specific act, but instead cites cases and regulations related to those statutes.[7] This argument is

---

case held that "[t]he issue is whether specific terms of the contract would violate public policy . . . ." *Id*. at 6. A contract to sell a salvage vehicle with a clean title is exactly what is prohibited by Section 4505.19(A)(5).

[7]     Thornton also argues that a specific duty is announced by R.C. § 1345.02(A)(10), which states that it is a deceptive trade practice to represent "[t]hat a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false." The Court disagrees. Thornton does not explain how the failure to obtain a

meritless, as negligence *per se* is only created by legislative enactments.  *Chambers v. St. Mary's School*, 697 N.E.2d 198, 203 (Ohio 1998).   The Court therefore agrees that the UCC and OCSPA cannot support a negligence *per se* claim.

State Farm does not argue that the duties imposed by the Ohio titling statute are so general or abstract that they cannot form a basis for a negligence *per se* claim.  Instead, State Farm argues that the titling statute was not intended to create a private right of action because enforcement is vested exclusively with the state highway patrol.  Although Sections 4505.11(C) and 4505.19(A)(5) may prohibit the sale of a salvage vehicle without a salvage title, under R.C. § 5503.02 the duty and authority to enforce "the laws of the state relating to titling, registration, and licensing of motor vehicles" rests with the State Highway Patrol.

State Farm's argument confuses a private right of action with negligence *per se*.[8]  A plaintiff attempting to assert a private right of action under a statute is asserting that a violation of the particular statute, standing alone, entitles her to a remedy.  *Fawcett v. G.C. Murphy & Co.*, 348 N.E.2d 144, 146 (Ohio 1976)*; Cort v. Ash*, 422 U.S. 66, 77 (1975).  Negligence *per se*, on the other hand, merely satisfies the duty and breach elements of a negligence claim.  *Pond v.*

---

salvage title could amount to a "representation" as to "a warranty, a disclaimer of warranties or other rights, remedies, or obligations . . . ."  This statute would have to be read in an abstract or general manner to apply to State Farm's actions.

[8]     Lower Ohio courts have occasionally done the same.  *Western Reserve Care Sys. v. Masters*, No. 97 CA 95, 1999 Ohio App. LEXIS 4695 (Ohio App. 1999).  State Farm relies heavily on *Western Reserve.*  However, neither of the reported cases cited by *Western Reserve* had anything to do with a negligence *per se* claim—the word "negligence" does not appear in either opinion.  *Fawcett v. G.C. Murphy & Co.*, 348 N.E.2d 144 (Ohio 1976); *Nielsen v. Ford Motor Co.*, 681 N.E.2d 470 (Ohio App. 1996).

*Leslein*, 647 N.E.2d 477, 479 (Ohio 1995); *Sikora*, 727 N.E.2d at 1281.  The plaintiff still must

meet her proofs on proximate cause and damages.  *Pond*, 647 N.E.2d at 479.

Thus, in State Farm's primary reported case of *Fawcett v. G.C. Murphy & Co.*, the

plaintiff did not bring a negligence *per se* claim but instead sought damages directly under the

following statute:

> No employer shall refuse opportunity of interview for employment of applicants
> or discharge without just cause any employee between the ages of forty and
> sixty-five who are physically able to perform the duties and otherwise meet the
> established requirements of the industry and laws pertaining to the relationship
> between employer and employee.

R.C. § 4101.17 (1976).  In light of the fact that a jury would have to assess general and abstract

issues such as "just cause" and whether the employee is "physically able to perform the duties"

of the job, the statute was certainly inappropriate for a negligence *per se* analysis.[9]  Similarly,

*Fawcett's* focus on enforcement by an administrative agency, while relevant to whether a direct

cause of action can be brought under a statute, is not dispositive for negligence *per se* purposes.

Accordingly, State Farm's argument that enforcement of titling laws by the State

Highway Patrol bars a negligence *per se* claim fails.  Indeed, Ohio courts have frequently

applied negligence *per se* to statutes that are enforced by an administrative agency.  *Sikora*, 727

---

[9]      The concept of a private right of action is better illustrated by
federal law, where more such actions have been recognized.  *Cort
v. Ash* is a seminal case in the development of federal private right
of action doctrine.  422 U.S. 66 (1975).  In *Cort,* the Supreme
Court held that there was no independent civil cause of action
under a federal criminal statute prohibiting corporations from
making certain contributions related to presidential campaigns.  *Id.*
at 178.  As in *Fawcett*, negligence or a duty of care simply was not
at issue.  *See also Nielsen*, 681 N.E.2d at 474 (applying the *Cort v.
Ash* test for a private right of action).

27

N.E.2d at 1279 (Ohio Basic Building Code); *Pond*, 647 N.E.2d at 479 (clear distance ahead

statute); *Reynolds v. Ohio*, 471 N.E.2d 776, 778-79 (Ohio 1984) (failure of law enforcement to

confine a prisoner during non-working hours); *Eisenhuth v. Moneyhon*, 119 N.E.2d 440, 444-45

(Ohio 1954) (citing a number of traffic laws).

Nonetheless, courts do consider legislative intent in determining whether a negligence

*per se* claim exists.  *See Sikora*, 727 N.E.2d at 1280-81 ("[T]he statute serves as a legislative

declaration of the standard of care of a reasonably prudent person applicable in negligence

actions.").  The proper inquiry regarding legislative intent is whether the statute is "designed to

protect the class of persons in which the plaintiff is included, against the risk of the type of harm

which has in fact occurred as a result of the violation . . . ."  *Reynolds v. Ohio*, 471 N.E.2d 776,

779 n.5 (Ohio 1984) (quoting Prosser, Law of Torts (4 Ed. 1971) 200-201, Section 36); *see also*

*Hernandez v. Martin Chevrolet, Inc.*, 649 N.E.2d 1215, 1216 (Ohio 1995) (explaining that courts

"must first determine whether the statute was intended to affect the duties owed for the safety

and protection of others").  Such a statute will operate as negligence *per se* so long as the

standard of care is sufficiently "positive and definite," as the Court discussed *supra*.  *Sikora*, 727

N.E.2d at 1280.

Although State Farm discussed legislative intent in its motion, it did so in the context of a

private cause of action, not a negligence *per se* claim.  Because State Farm's motion did not

address the proper factors, the Court cannot conclude that dismissal is proper at this time.  *C.f.,*

*e.g., Lewis v. Horace Mann Ins. Co.*, 410 F. Supp. 2d 640, 659 (N.D. Ohio 2005) (concluding

that under Ohio law the Michigan salvage title statute is "intended to affect duties owed for the

safety and protection of others" and is not stated "in general or abstract terms"); *Tekavec v. Van*

28

*Waters & Rogers, Inc.*, 12 F. Supp. 2d 672, 682-83 (N.D. Ohio 1998) (holding that certain federal regulations were not intended to affect the duties owed for the safety and protection of others because they are limited to "matters of transport and not customer use"); *Treadwell Ford, Inc. v. Campbell*, 485 So.2d 312 (Ala. 1986) (holding, under Alabama law, that a similar salvage title law could not serve as negligence per se because the statute was not "designed to protect the class of persons of which the plaintiff is a member and to prevent the type of injury that plaintiff suffered").

### NEGLIGENT MISREPRESENTATION (COUNT 8)

The Ohio Supreme Court recently explained the tort of negligent misrepresentation as follows:

> [P]rofessional liability, and thus a duty in tort, [applies] only in those limited circumstances in which a person, in the course of business, negligently supplies false information, knowing that the recipient either intends to rely on it in business, or knowing that the recipient intends to pass the information on to a foreseen third party or limited class of third persons who intend to rely on it in business.

*Corporex Dev. & Constr. Mgmt. v. Shook, Inc.*, 835 N.E.2d 701, 705 (Ohio 2005).  State Farm argues that Thornton fails to state a claim because she has ignored the "business" aspect of the tort and because State Farm did not make a representation.

The Court agrees that the business element of negligent misrepresentation is not met in this case.  The Ohio Supreme Court is unequivocal that negligent misrepresentation is a business tort related to professional malpractice.  *Id.*; *Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989).  Thus, "[t]he elements for negligent misrepresentation clearly require (1) a defendant who is in the business of supplying information; and (2) a plaintiff who sought guidance with respect to his business transactions from the defendant."  *Guar. Co. of N. Am. v.*

29

*City of Cleveland*, No. 1:95-cv-1936, 1997 U.S. Dist. LEXIS 15285, *20 (N.D. Ohio Sept. 24, 1997) (quoting *Nichols v. Ryder Truck Rental, Inc.*, No. 65376, 1994 Ohio App. LEXIS 2697, *11 (June 23, 1994)).  Here, Thornton alleges that the vehicle purchase was a "consumer transaction" conducted "primarily for personal, family or household purposes."  Just as "[n]o court in Ohio, . . . has held the tort of negligent misrepresentation applicable to the employer-employee relationship," *Nichols*, 1994 Ohio App. LEXIS 2697 at*12, this Court will not expand the tort into the realm of simple consumer transactions.[10]  To do so would wholly remove a tort originally founded in concepts of professional liability from its foundations.

Thornton cites *Merrill v. William E. Ward Ins.*, 622 N.E.2d 743 (Ohio App. 1993), as supporting her claim.  *Merrill* held that an insurer could be liable to policy beneficiaries for a negligent misrepresentation to the insured.  *Id*. at 749.  Thornton posits that the underlying transaction in *Merrill* was not for use in the insured's business, and thus, the negligent misrepresentation tort extends to conventional consumer transactions.  However, the *Merrill* Court evidently failed to address the issue of the "business transaction" requirement.  Had it

---

[10]    Courts are wary of applying the tort to typical *business* transactions, let alone a consumer transaction:

> This relationship occurs only in "special" circumstances. Usually the defendant is a professional (e.g., an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class. This "special" relationship does not exist in ordinary business transactions.

*Picker Intern. Inc. v. Mayo Found.*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998) (citations omitted).

30

done so, the result might have been different. In any event, it quoted the correct rule—that

information must be supplied "for the guidance of others in business transactions"—and the

disposition of one's assets might reasonably be considered a business transaction. Here,

Thornton simply purchased a vehicle for personal use. Accordingly, even if *Merrill* is correct, it

does not aid Thornton. Her negligent misrepresentation claim must be dismissed.

<u>DECEPTIVE TRADE PRACTICES ACT (COUNT 9)</u>

State Farm seeks to dismiss Thornton's claim under the Ohio Deceptive Trade Practice

Act, R.C. §§ 4165.01, *et seq.*, on the basis that the statute only applies to disputes between

commercial entities. The Court agrees. Courts within the Northern District of Ohio have twice

held that the Deceptive Trade Practices Act "governs conduct between commercial entities, not

between a commercial entity and a consumer." *Glassner v. R.J. Reynolds Tobacco Co.*, 5:99-cv-

0796, 1999 U.S. Dist. LEXIS 22637, *21 (N.D. Ohio June 29, 1999); *see also Chamberlain v.

Am. Tobacco Co.*, 1-96-cv-2005, 1999 U.S. Dist. LEXIS 22636, *60 & n.12 (N.D. Ohio Nov. 19,

1999) (holding that "the plain language of the Act indicates that it applies between business or

commercial entities").

Thornton responds with two cases. In the first, *Walker v. Cadillac Motor Car Division*,

578 N.E.2d 524 (Ohio App. 1989), the Ohio Court of Appeals purportedly "reviewed a consumer

DTPA cause of action and never held that the DTPA excluded consumer transactions."

However, the *Walker* Court only addressed the DTPA claim with respect to the fact it was

meritless and might warrant an award of fees to the defendant. *Id.* at 531. The second case,

*Evans v. Cheek*, 584 N.E.2d 1236 (Ohio App. 1989), was an appeal from a jury verdict in favor

of a consumer under the OCSPA, the Odometer Rollback and Disclosure Act and the DTPA.

31

The appellate court did not even consider the DTPA, since the only assignment of error had to do with the admissibility of expert testimony. *Id.* at 1237-39.

In short, Thornton has failed to cite any relevant authority that causes this Court to doubt its conclusion that a DTPA claim only applies between commercial entities. Accordingly, Thornton's DTPA claim must be dismissed.

FRAUD (COUNT 1)

The elements of a fraud claim are as follows:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*State ex rel. the Illuminating Co. v. Cuyahoga County Court of Common Pleas*, 97 Ohio St. 3d 69, 74 (Ohio 2002).

State Farm argues that Thornton fails to state a claim because the first element is lacking. The Court disagrees. Thornton has alleged a false representation in her complaint. She alleges that she received a clean title rather than a salvage title. According to her complaint, this was a misrepresentation of the vehicle's total loss history. State Farm does not belabor this point, but instead argues that no misrepresentation was ever made *to Thornton*. However, the misrepresentation is in the title itself, which State Farm allegedly used to misrepresent that the vehicle was not salvage. Thornton eventually came to possess the vehicle and the title. State Farm has cited no authority that a representation cannot be made in such a manner and its motion is denied.

Although Thornton's claim will not be dismissed solely on the basis that she has alleged

a representation, the Court will also address State Farm's contention that Thornton has not alleged a proper duty to disclose that would support a fraud claim based on concealment. State Farm repeats its argument that the salvage title laws do not create a private right of action and posits that allowing a fraud claim where no private right of action exists would be an improper end-around the prohibition on a private cause of action. First, the Court has already rejected the contention that the duties imposed by the salvage title laws cannot be used to supplement other claims. Second, the only authority cited by State Farm is from foreign jurisdictions, and, as with State Farm's negligence *per se* arguments, relates to statutes that were held not to support an independent cause of action. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 201 (2d Cir. 2005) (explaining that the "New York legislature [did] not intend[] to grant a direct private right of action under" the statute at issue). Rather, in the only Ohio authority cited on the issue, the appellate court held that a law that required disclosure of lemon law buyback vehicles created a duty to disclose sufficient to support a fraud claim. *Lee v. Chrysler Corp.*, No. 2004CA00164, 2005 WL 449762, ¶20 (Ohio App. Feb. 22, 2005).

Accordingly, the Court concludes that Thornton's fraud claim will not be dismissed.

DECLARATORY JUDGMENT (COUNT 10)

Finally, State Farm asks the Court to dismiss Thornton's claim for declaratory judgment. Declaratory judgment actions are intended to address and prevent ongoing or future injury. *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001). Here, the alleged injuries to Thornton and her fellow class members have already occurred. *See Blakely v. United States,* 276 F.3d 853, 872 (6th Cir. 2002). Thornton alleges uncertainty over the status of the vehicles that are potentially subject to this class action, but that uncertainty is only related to whether or not

she will prevail in this litigation.  Indeed, her declaratory judgment claim seeks a declaration that State Farm "has breached" the warranties of title, merchantability and good faith, that it "has breached the warranties implied in common law," that its actions "constituted negligent misrepresentation," and that State Farm should be required to disgorge the monies it long ago received "in connection with this title laundering scheme."[11]  Because there is no ongoing or future conduct at issue, the declaratory judgment claim must be dismissed.

### **CONCLUSION**

State Farm's motion to dismiss is GRANTED as to Counts 3, 4, 5, 8, 9 and 10 of Thornton's Complaint and DENIED as to Counts 1, 2, 6 and 7.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
_____
PATRICIA A. GAUGHAN
United States District Judge


Dated:  11/17/06

---

[11]      Thornton cites two unreported Common Pleas cases that she claims support a declaratory judgment claim under Ohio law.  To the contrary, the rule is the same in Ohio: "a declaratory judgment, which defines the rights and duties of parties, is to be distinguished from an attempt to redress a past breach of a duty . . . ."  *Morning View Care Ctr. - Fulton v. Ohio Dep't of Job & Family Servs.*, 821 N.E.2d 1046, 1050 (Ohio App. 2004).