**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Angela-Crystal Thornton | ) | **CASE NO. 1:06-cv-00018** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| State Farm Mutual Auto Insurance | ) | |
| Company, Inc. | ) | **Memorandum Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") has filed a

Motion to Strike the Class Allegations in Plaintiff's Third Amended Complaint (Doc. 30).  This

case arises out of State Farm's failure to obtain a salvage title for a vehicle that Angela-Crystal

Thornton later purchased.  For the reasons that follow, the motion is GRANTED.

**BACKGROUND**

Most states, including Ohio, have laws that require insurance companies to obtain

1

branded or salvage titles for vehicles in certain circumstances.  These titles place subsequent purchasers on notice of the vehicles' damage history, and in some circumstances may prevent the vehicles' operation on public roads.  Between 1997 through 2003, State Farm processed 32,000 "total loss" vehicles for which it was unable to verify that it ever obtained a branded title.[1] Thornton's 1997 Honda Accord was one of those vehicles.

To resolve concerns over improperly titled vehicles State Farm entered into an Assurance of Voluntary Compliance (the "AVC") with the Attorneys General of 49 states in 2005. Pursuant to the AVC, State Farm agreed to pay consumers who came into possession of the vehicles between 20-50% of the present NADA "blue book" value in exchange for a release of liability.  State Farm paid a total of $40 million dollars under this plan.  Consumers in Ohio received letters informing them of the AVC plan and setting out the procedures to receive payment.  The letter also explained that State Farm would notify the Ohio Bureau of Motor Vehicles (the "BMV") that the vehicle titles needed to be branded as salvage.  A second letter explained that a vehicle with a salvage title cannot be operated on public roads, but provided an expedited procedure for obtaining a "rebuilt salvage" inspection to determine whether the vehicle could be operated.  According to Thornton, only 392 of approximately 1,000 eligible Ohio consumers elected to participate in the settlement.

Thornton asserts claims against State Farm for Fraud, Violation of the Ohio Consumer Sales Practices Act, Consequential and Equitable Relief for Void Transfer, Negligence *Per Se*,

---

[1]      State Farm notes that the states' various branded title laws are different, and further that a total loss under State Farm's standards is not necessarily equivalent to a particular state's branding requirements.

Breach of Warranty of Title, Breach of Warranty of Merchantability and Duty of Good Faith under the UCC, Breach of Common Law Implied Warranties, Negligent Misrepresentation, Deceptive Trade Practices and Declaratory Judgment.   She seeks to represent a "class composed of all Ohio residents who have been sent notice of their entitlement to participate in State Farm's settlement with the Ohio Attorney General; who have not opted into the AG settlement; and who have not filed an insurance clam for a personal injury sustained while an occupant of a vehicle included in the AG settlement."  State Farm has moved to strike Thornton's class allegations.

### STANDARD OF REVIEW

"When a person sues or is sued as a representative of a class, the court must—at an early practicable time—determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).  "[T]he court may make appropriate orders: * * * (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters."  Fed. R. Civ. P. 23(d)(4)-(5).  Under these rules a defendant may file a motion to strike class allegations.[2] *See* Local Rule 23.1(c) ("Nothing in this Rule shall preclude any party from moving to strike the class action allegations.").

A plaintiff seeking to bring a class action must satisfy Rules 23(a) and 23(b).  Under Rule 23(a), the party seeking class certification must show:

---

[2]    The Court thus rejects Thornton's contention that State Farm's motion is improper and should have been filed under Rule 12(f). *See, e.g., Bennett v. Nucor Corp.*, No. 3:04cv291SWW, 2005 WL 1773948, at *2 n.1 (E.D. Ark. July 6, 2005) (explaining that a "motion to strike class allegations is governed by Rule 23, not Rule 12(f)").

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition, the party seeking certification must demonstrate that one of the requirements of Rule 23(b) is met.  Thornton relies on Rule 23(b)(3), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining whether a class is proper under Rule 23(b)(3), courts should consider the following non-exhaustive[3] list of factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

## **DISCUSSION**

State Farm's motion focuses on whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  State Farm posits that the superior method for class-wide relief was the AVC.  The AVC was signed by 49 Attorneys General including Ohio's and afforded those who opted to recover under its terms a prompt and simple settlement procedure.  State Farm believes that those such as Thornton who declined to

---

[3]     Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendments.

4

participate in the AVC are entitled to bring their individual actions, but that class-wide relief has

already been afforded by the AVC.

A number of cases support the proposition that state relief coupled with an opportunity to

bring individual claims is superior to a class action. In *Kamm v. California City Dev. Co.*, the

defendants moved to strike class allegations "based primarily on the fact that state action had

already commenced by the California Attorney General and Real Estate Commissioner with

respect to the same controversy and relief had been obtained." 509 F.2d 205, 207 (9th Cir.

1975). The state plaintiffs had filed an action in state court which resulted in a settlement and

final judgment against some of the defendants. *Id*. at 208. The Ninth Circuit affirmed a holding

that a separate class action was not superior, even though "not all members of the class appellant

seeks to represent will be protected by the California settlement; nor will the class recover an

amount that is even close to that sought in the class action." *Id.* at 211. The *Kamm* Court cited

the following reasons to defer to the state action: (1) a federal class action would duplicate and

possibly negate the work on the state level; (2) the class action would involve many buyers over

an extended period; (3) significant relief had been realized in the state action; (4) the state court

retained continuing jurisdiction; (5) no member of the class was barred from initiating a suit on

his own behalf; (6) the plaintiff's action was still viable despite dismissal of the class allegations;

and (7) defending a class action would prove costly to the defendants and duplicate much of the

work expended in the state action. *Id*. at 212.

Other courts have similarly found state actions to be superior to related federal class

actions. *See, e.g., Brown v. Blue Cross & Blue Shield of Michigan, Inc.*, 167 F.R.D. 40, 46 (E.D.

Mich.. 1996) (citing *Kamm* and denying a motion for class certification where "[t]he agreement

entered into by the State and defendant covers all members of the proposed class . . . and

5

provides full co-pay relief on all but de minimis claims"); *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 532 (D. Md. 2001) (explaining that the Maryland Insurance Agency had investigated the accused practices and that "[i]n any event, as a supplement to administrative proceedings, the small claims courts" are perfectly adequate); *Wechsler v. Southeastern Props., Inc.*, 63 F.R.D. 13, 16-17 (S.D.N.Y. 1974) (finding that an action in state court by the attorney general justified dismissal of class action); *Freeman Indus. LLC v. Eastman Chem. Co.*, No. E2003-00527-COA-R9-CV, 2004 Tenn. App. LEXIS 321 (May 18, 2004) (holding that the "involvement of the attorneys general and the undesirability of concentrating the class litigation in Tennessee is enough to destroy predominance and superiority").

The Court finds the reasoning and policy underlying these holdings to be rather compelling.  Proceedings by the state, whether in a judicial or an administrative forum, are presumably taken with the best interests of state residents in mind.  Reasonable settlement by the accused should be encouraged.  Indeed, potential class members will often recover more than they would in a private action when costs and attorneys' fees are factored in.  D. Bruce Hoffman*, To Certify or Not: A Modest Proposal for Evaluating the "Superiority" of a Class Action in the Presence of Government Enforcement*, 18 Geo. J. Legal Ethics 1383, 1387 (2005).  However, if courts consistently allow parallel or subsequent class actions in spite of state action, the state's ability to obtain the best settlement for its residents may be impacted, since the accused may not wish to settle with the state only to have the state settlement operate as a floor on liability or otherwise be used against it.

Thornton responds that a number of the cases involved actual lawsuits by the Attorney General as opposed to administrative actions.  The Court finds this to be a distinction without a

6

difference.[4]  Courts have applied the *Kamm* rule to settlements following an investigation by a state Attorney General.  *E.g., Brown,* 167 F.R.D. at 42.  The policy against duplicative class actions applies with equal or greater force following such investigations.  The Attorney General makes an informed decision whether it is in the interest of class members to settle a difficult case or go to trial.  A settlement also avoids depleting the parties' war chests during a trial and leaves more funds available for settlement.

Thornton next claims that the AVC does not provide adequate compensation.  The Court simply disagrees.  The AVC provided substantial compensation to the typical claimant.  Those with vehicles in good working order have not incurred significant actual damages but nonetheless received significant payments and can continue to drive their cars.  Contrary to Thornton's claims, individuals whose vehicles were not in good working order as a result of State Farm's actions have ample incentive to bring individual suits—as many already have—because their potential damages are greater.  Moreover, Thornton's speculation that she could achieve a better settlement does not make a class action superior.  As a number of courts have recognized, litigation is necessarily fraught with uncertainty, such that it is often advisable "to take a bird in the hand instead of a prospective flock in the bush."  *Brown*, 167 F.R.D. at 44 (internal citation omitted); *see also Kamm*, 509 F.2d at 211 (rejecting the plaintiffs' contention that the state action "does not sufficiently represent and protect the interests of the entire class").

---

[4]    Thornton's argument that the AVC has expired is similarly without merit.  The important point is that Thornton and any potential class members had ample notice and time to participate in the AVC.  To require the settlement to stay open would discourage reasonable settlement, since claimants could take their case to court, or watch how other cases progress, only to fall back on the settlement when the litigation does not pan out.

Accordingly, Thornton's arguments are without merit and the Court will consider the *Kamm* factors.  First, a federal class action would duplicate and possibly negate action taken on the state level.  The Attorneys General for 49 states expended substantial effort to come to a nationwide agreement with State Farm.  Second, as will be discussed in more detail *infra*, a class action would involve vehicles purchased and operated over an extended period in a myriad of different circumstances.  Third, the relief afforded by the AVC was significant.  Many of the owners presumably drove their vehicles for years, can keep their vehicles, and nonetheless received thousands of dollars by filling out a simple form.  Fourth, anyone who had substantial problems with their vehicle such that the AVC does not provide adequate compensation presumably has significant damages that would justify an individual suit.  Indeed, many such suits are already pending in courts throughout Ohio.  Finally, the Court agrees that defending a class action would prove costly to the defendants and duplicate much of the work expended in the state action.  In sum, all but one of the *Kamm* factors[5] favor striking the class allegations.

Thornton nonetheless believes that she should have more time to conduct discovery on issues related to class certification.  The Court disagrees.  First of all, the command of Rule 23(c)(1) is to decide class certification "as soon as practicable after the commencement of an action brought as a class action."  Although this Rule "does not mandate precipitate action[,]" it is only necessary to delay a decision where "the existing record is inadequate for resolving the relevant issues."  *In re American Medical Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996) (quoting *Chateau de Ville Prods., Inc. v. Tams-Witmark Music Library Inc.*, 586 F.2d 962, 966 (2d Cir.

---

[5]    The only *Kamm* factor not present in this case is whether "the state court retained continuing jurisdiction."  The Court finds that this factor is of little import here, since the other factors weigh so heavily in favor of striking the class action.

8

1978)).  The *Kamm* decision is quite instructive in this regard.  The *Kamm* plaintiffs argued that the lower court erred in denying them discovery.  *Kamm*, 509 F.2d at 209.  The Court of Appeals explained that "[w]here the necessary factual issues may be resolved without discovery, it is not required."  *Id.* at 210.  Because the state record was already before the lower court there was no need for discovery.  *Id*.  Similarly, the AVC and related documents are before this Court.  The AVC, standing alone, compels this Court to strike Thornton's class allegations.  No point would be served by further discovery.

Moreover, the Court is more than familiar with the underlying claims in this case and is confident that any discovery would only further reveal that Thornton's claims are not appropriate for class treatment.  State Farm points to a "myriad of individualized questions of fact" as supporting its motion to strike:

> As to each vehicle, at a minimum, this would include determination of whether a branded title was ever required, determination of whether a branded title was ever issued by a state motor vehicle department, analysis of which state's law(s) applied, prior repair information, valuation information at various points in time, the vehicle owner's knowledge upon purchase or subsequent thereto of the vehicle's prior history, intermittent vehicle owner's knowledge and/or disclosures regarding the vehicle's history, intermittent vehicle owner's use and/or repair of the vehicle and the vehicle owner's investigation of the vehicle.

(Doc. 30 at 14 fn. 6).

Although the Court does not necessarily agree that all of these issues would require individualized inquiry,[6] it is quite clear that some of them will.  At a minimum, each vehicle

---

[6]     For example, although State Farm has not admitted liability or fault through the AVC, it has created a situation where Thornton is penalized by its representation that the vehicle at issue requires a salvage title.  The Court is simply not convinced that she will need to prove that the vehicle initially qualified as salvage in light of State Farm's representations to the BMV.

9

would require an individual valuation and an assessment of the reduction in value caused by a salvage title. Certainly, no plaintiff should recover who had knowledge of the vehicle's salvage status, since they presumably paid the market price for a salvage vehicle. Because many of the vehicles (including Thornton's) originated in different states before making it to Ohio there will be many choice of law issues and the possible application of other states' laws to the claims. That these and other issues will require an individualized assessment only buttresses the Court's conclusion that Thornton's class allegations must be stricken.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Start Farm's motion.


IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/17/06