**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Angela-Crystal Thornton** | ) | **CASE NO. 1:06-cv-00018** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **State Farm Mutual Auto Insurance** | ) | |
| Company, Inc. | ) | **Memorandum Opinion and Order** |
| | ) | |
| Defendant. | ) | |

### INTRODUCTION

Plaintiff Angela-Crystal Thornton has filed a motion to reconsider the Court's order striking class allegations (Doc. 79). The motion follows the Court's memorandum opinion and order granting State Farm Mutual Auto Insurance Company's ("State Farm") motion to strike the class allegations (Doc. 30, 75). For the reasons that follow, the motion to reconsider is DENIED.

1

**DISCUSSION**

The Federal Rules of Civil Procedure do not provide for motions for reconsideration. "Instead, such motions, if served within ten days of entry of judgment, are considered motions to alter or amend judgments pursuant to . . . Rule 59(e)." *Stubblefield v. Skelton*, unreported, 117 F.3d 1421 (6th Cir. July 10, 1997) (citing *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982)). "Generally, there are three major situations which justify a court reconsidering one of its orders: 1) to accommodate an intervening change in controlling law; 2) to account for new evidence not available at trial; or 3) to correct a clear error of law or to prevent a manifest injustice." *Hancor, Inc. v. Inter American Builders Agencies*, 1998 WL 239283 (N.D. Ohio March 19, 1998), *citing In re Continental Holdings, Inc.*, 170 B.R. 919, 939 (Bankr. N.D. Ohio 1994).

Plaintiff argues that she has discovered "new" information regarding the Assurance of Voluntary Compliance ("AVC") between the Ohio Attorney General and State Farm. Specifically, in Plaintiff's Complaint she alleged that "[m]ore than 1,000 of the consumers entitled to opt-in to the AG settlement are Ohio residents [but] [o]nly 392 Ohioans elected to participate in the settlement." Both State Farm and the Court parroted this allegation in briefs and opinions.

On October 4, 2006, after briefing with respect to State Farm's motion to strike had closed, but prior to the date Plaintiff submitted a Notice of Submission of Supplement Authority and Supplemental Memorandum (Doc. 69), Plaintiff received an interrogatory response from State Farm indicating that 503 notices were sent to Ohio vehicle owners under the AVC. Thus, of the 503 Ohioans notified under the AVC, 392 chose to participate in the settlement.

Plaintiff accuses State Farm of misleading the Court in its motion to strike. However, State Farm was merely accepting the allegations of Plaintiffs' Complaint as true, just as Plaintiff says State Farm is required to do. Indeed, it is difficult to understand why State Farm would wish to conceal from the Court that the vast majority (nearly 80%) of individuals eligible under the AVC chose to accept the settlement, rather than the bare minority (less than 40%) alleged in Plaintiff's Complaint. This would only support State Farm's argument that the compensation offered by the AVC was fair. Moreover, with many of the remaining 111 eligible Ohioans having filed lawsuits already, it is now even more apparent that private lawsuits are an adequate alternative for those who chose not to opt in.

Plaintiff notes for the first time in her Reply brief, without elaboration or evidentiary support, that she "obtained a list of vehicle identification numbers ('VINs') which were provided to the BMV by State Farm under the terms of the AVC. The list contains approximately 1,000 VINs." She thus argues that "approximately 500 individuals have had neither an administrative proceeding to address their claims nor their day in court." This observation entirely misses the point of the *Kamm* rule adopted in the Court's earlier decision. In any such settlement there is going to be a decision as to who is eligible to recover—i.e., who actually has a claim for the class-wide relief obtained by the State. Here, the Ohio Attorney General decided it was the 503 people who received notice. It would be odd indeed to turn around and certify a class action on behalf of those the AG decided were *not* eligible for the settlement.

Nonetheless, Plaintiff now wishes to expand her class definition of all Ohioans who received notice under the AVC (but did not accept the settlement) to also include people who *did not* receive notice under the AVC. Not only is the problematic of its own right, but it brings to

3

bear the exact concerns the Court cited in granting the motion to strike in the first place. Simply put, the Ohio Attorney General acts to promote the best interests of Ohio residents. It was in this role that the AG approved the settlement and decided who was eligible to recover and receive notice of the settlement. As evidenced by the high acceptance rate, that settlement (in which State Farm paid over $40 million nationwide) was clearly adequate for the vast majority of Ohioans. Although the Court need not repeat its earlier discussion here, it is sufficient to note that the AG's ability to obtain such favorable settlements would be greatly hindered if every settlement served as the basis for endless class action litigation by ever-shifting classes of those least entitled to relief.

In sum, as a result of the work of the Attorney General, Plaintiff and her attorneys have discovered past wrongdoing by State Farm. They are more than entitled to a fair hearing on the merits of her claims. However, they are not entitled to create a burdensome class action of marginal and nonexistent claims where the AG has already resolved class compensation on a basis that is satisfactory to the vast majority of the impacted consumers.

**CONCLUSION**

Accordingly, Thornton's motion for reconsideration is DENIED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 12/12/06